# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HELEN A. GRAVINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10-cv-6753 |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Helen Gravina filed a complaint for judicial review of a final decision by Defendant Michael Astrue, Commissioner of the Social Security Administration, denying her claim for the establishment of a period of disability and for disability insurance benefits. Before the Court are Gravina's motion [21] and the Commissioner's motion [35] for summary judgment. For the following reasons, the Court grants Gravina's motion [21] and remands this case for further proceedings consistent with this opinion. The Commissioner's motion [35] is respectfully denied.

**I.   Background**

Gravina was born in 1962. Administrative Record ("R.") at 99. She is a resident of Roselle, Illinois, and has three children. R. at 101. Gravina completed high school and one year of college. R. at 123. She has worked as an office clerk, customer service representative, and administrative assistant. R. at 138. In May 1998, a few weeks after the birth of her child, Gravina began having blind spots in her vision. R. at 367. She has not worked since that time. R. at 367. Gravina was treated by Drs. Wohl, Allar, and Haag. R. at 368-69.

1

In September 1998, Dr. Wohl diagnosed Gravina with diabetic retinopathy and choroidal ischemia (i.e. obstructed circulation) of both eyes; the etiology was noted as diabetes/pre-eclampsia. R. at 217. In November 1998, Dr. Allar gave Gravina a follow-up retinal examination. R. at 219. Dr. Allar told Gravina that the spots she was seeing would mostly likely be permanent since they had not resolved since May, when she had pre-eclampsia. R. at 220. In February 1999, Gravina underwent left eye surgery due to estropia. R. at 170. Despite a successful surgery for the estropia, the surgeon, Dr. Oesterle, noted that Gravina still had some diplopia and visual field defects that were permanent. R. at 175.

In January 2000, Dr. Haag diagnosed Gravina with paracentral scotomas (i.e. blind spots) that prevented her from seeing an entire computer screen and interfered with her ability to read. R. at 174. She later tested positive for strabismus (i.e. cross eyes). R. at 181. In July 2002, Dr. Haag wrote that Gravina had a history of visual field deficits secondary to eclampsia. R. at 178. In July 2003, Gravina filed an application for Social Security disability insurance benefits, alleging an onset date of April 16, 1998. R. at 99.

In September 2003, Dr. Haag completed a visual impairments form consistent with his previous diagnoses. R. at 200. Dr. Haag noted that there were fluctuations in Gravina's visual acuity, which was also affected by her diabetes. R. at 202. Among other things, Dr. Haag reported that Gravina: 1) had difficulty reading or paying attention to details, 2) required rest periods for eye fatigue, 3) was unable to perform tasks that required good hand-eye coordination, 4) may not be able to drive safely, and 5) could not effectively use office equipment (such as computers) on a sustained basis. R. at 203-04. Dr. Haag completed another form in February 2005 with similar findings. R. at 231.

On October 7, 2005, the ALJ conducted a hearing. There, Gravina explained that she: 1) hadn't been using a computer because she sees less than half of the screen, 2) had headaches at least once or twice a week, 3) got very tired after mid-day, and 4) had trouble helping her kids with homework and doing household chores. R. at 372-74. Dr. Torczynski testified as the medical expert. She opined that Gravina's blind spots were not related to her diabetes; rather, the etiology was unknown. R. at 384, 397. Dr. Torczynski emphasized the variability in Gravina's visual field exams. R. at 389-91. She saw no objective evidence that Gravina could not work with large objects to avoid ordinary hazards in the workplace. R. at 391.

In November 2005, Dr. Hathcoat, an optometrist, reported that Gravina's condition was "quite visually debilitating." R. at 312. He surmised that her ability to read and interpret computer graphics would be "greatly diminished for normal business requirements." R. at 312. Dr. Hathcoat also opined that Gravina would need frequent rest periods. R. at 317.

On December 15, 2005, the ALJ denied Gravina's application. R. at 254-59. Gravina appealed, and the case was remanded by the Appeals Council on October 2, 2007. R. at 264-67. The Council specifically noted, among other things, that the ALJ's decision did not adequately evaluate Dr. Haag's opinions or Gravina's subjective complaints. R. at 265-66.

Also in October 2007, Dr. Haag completed another form consistent with his earlier findings. R. at 320. In January 2008, Dr. Goldstein, a rehabilitation counselor, submitted a vocational rehabilitation evaluation. R. at 305-07. Dr. Goldstein concluded that Gravina's condition would prevent her from doing her past work and many other jobs. R. at 307.

On April 2, 2008, the ALJ conducted a second hearing. There, Plaintiff testified that she had not worked since the last hearing and that her vision had not changed. R. at 406-08. Dr. Torczynski's testimony similarly did not change; she noted the variability in Gravina's visual

field exams and maintained that Gravina could perform a job that did not require a full day of reading small letters/numbers. R. at 412, 426. Thomas Guslosff and William Newman, vocational experts, also testified. Newman opined that a person with the functional capacity noted by Dr. Torczynski could perform Gravina's prior jobs. R. at 436-37. Newman maintained, however, that a person requiring the rest periods described by Dr. Haag, or having the blind spots described by Gravina, could not perform Gravina's prior jobs or other named jobs. R. at 439.

Also in April 2008, Dr. Haag provided a summary of his evaluation of Gravina. R. at 342. He reiterated that, although Gravina had no objective clinical findings, her blind spots could be attributed to her pre-eclampsia. R. at 342. Dr. Haag acknowledged that Gravina's visual field tests were variable, but opined that "some patients just do not perform consistently on visual field testing." R. at 342. In May 2008, Dr. Torczynski wrote that Dr. Haag's summary did not change her opinion. R. at 344-45.

On February 2, 2009, the ALJ again denied Gravina's application. R. at 23-33. The ALJ first found that Gravina had a severe impairment, namely, bilateral paracentral scotoma. R. at 29. But the ALJ also found that Gravina "had the residual functional capacity to perform a full range of work at all exertional levels as well as the ability to handle and work with large objects and avoid ordinary hazards in the workplace." R. at 29. On this point, after summarizing the medical evidence, the ALJ provided the following analysis:

> Controlling weight was not given to the opinions of Dr. Haag and no significant weight was afforded to any nonexamining sources. However I gave considerable weight to the testimony of [Dr. Torczynski] as it was much more detailed in findings and better supported in rationale. In this regard [Dr. Torczynski] had a better understanding of the disability program and the evidentiary requirements along with being familiar with all the information in the administrative record. In a similar fashion I did not consider [Gravina's] testimony as convincing evidence.

4

> Again [Dr. Torczynski] heard all the testimony and her detailed rationale did not support the reported degree of subjective limitation.

R. at 32. Gravina appealed again, but the Appeals Council denied review. R. at 8-10.

## II. Legal Standards

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (same). "[I]f the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

Notably, an ALJ must articulate, at a minimum, his analysis of the evidence to allow the reviewing court to trace the path of his reasoning and to be assured that he considered the important evidence. See *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

### B. Disability Standard

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

A five-step inquiry determines whether the claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: 1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled; if no, the inquiry proceeds to Step 2; 2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled; if yes, the inquiry proceeds to Step 3; 3) Does the impairment meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; 4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled; if no, then the inquiry proceeds to Step 5; 5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); see also *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

At Steps 4 and 5, the ALJ must consider the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant record evidence. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving Steps 1-4; the burden at Step 5 is on the Commissioner. *Id*. at 1000.

## III. Analysis

Gravina argues that the ALJ's decision was erroneous because: 1) he made no specific findings regarding Gravina's credibility; and 2) he failed to provide a sufficient explanation of the weight given to Dr. Haag's opinion. The Court considers each argument in turn.

### A. Claimant's Credibility

Gravina argues that the ALJ failed to make a proper finding concerning her credibility. The Commissioner concedes that "the ALJ could have more fully discussed his reasons for finding [Gravina] not fully credible" but maintains that his reasoning was adequate. [36 at 3.] To repeat, the ALJ's sole analysis on this issue comprised the following two sentences:

> In a similar fashion I did not consider [Gravina's] testimony as convincing evidence. Again [Dr. Torczynski] heard all the testimony and her detailed rationale did not support the reported degree of subjective limitation.

R. at 32.

The ALJ first stated a conclusion that he did not find Gravina's testimony convincing, neglecting to point out what part of Gravina's testimony he found not credible. In *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003), the Seventh Circuit remanded where the ALJ stated that the claimant's testimony was not credible "for the reasons set forth in the body of the decision." In so holding, the court rejected the Commissioner's argument that the ALJ's reasoning could be implied. *Id.* at 916 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL

374186 (July 2, 1996)). Here, the Commissioner similarly argues that the ALJ's reasoning was "apparent" but fails to distinguish *Golembiewski*. [36 at 3.] As in *Golembiewski*, the ALJ's inadequate credibility determination matters here because the vocational expert testified that a person requiring the rest periods described by Dr. Haag, or having the blind spots described by Gravina, could not perform Gravina's prior jobs or other named jobs.

Ultimately, the ALJ appeared to reject Gravina's testimony because it was subjective evidence. But the Seventh Circuit has found that "once the claimant produces medical evidence of an underlying impairment," which Gravina undoubtedly did, "the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (internal quotation omitted); see also 20 C.F.R. § 404.1529(a). Indeed, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only *one factor* that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." SSR 96-7p, 1996 WL 374186, at *6 (emphasis added). Here, the ALJ's analysis failed to show that he considered any other factor in evaluating Gravina's testimony. Accordingly, the ALJ's credibility determination was legally inadequate.

### B. Treating Doctor's Opinion

Gravina also argues that the ALJ failed sufficiently explain the weight given to Dr. Haag's opinion. The Commissioner again argues that the ALJ's explanation was adequate. To repeat, the ALJ's sole analysis on this issue comprised the following three sentences:

> Controlling weight was not give to the opinions of Dr. Haag and no significant weight was afforded to any nonexamining sources. However I gave considerable weight to the testimony of [Dr. Torczynski] as it was much more detailed in findings and better supported in rationale. In this regard [Dr. Torczynski] had a

> better understanding of the disability program and the evidentiary requirements along with being familiar with all the information in the administrative record.

R. at 32.

The ALJ first stated that "controlling weight" was not given to Dr. Haag's opinion. But the regulations provide that "[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected" and that an ALJ's denial of benefits "must contain specific reasons for the weight given to the treating source's medical opinion." See SSR 96-2p, 1996 WL 374188, at *1, 5 (July 2, 1996). Here, the ALJ did not explain what weight (other than non-controlling) was accorded to Dr. Haag's opinion.

Ultimately, the ALJ seemed to have disregarded Dr. Haag's opinion because it conflicted with Dr. Torczynski's opinion. But the Seventh Circuit has found that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Here, the ALJ did not explain why Dr. Torczynski's opinion was "better supported in rationale" other than that she "had a better understanding of the disability program and the evidentiary requirements." This explanation is troublesome. As Gravina points out, if an ALJ can reject a treating physician's opinion simply because a non-treating, non-examining doctor is more familiar with the disability standards, he would be granting favored status to the non-treating doctor that is unsupported by the regulations. See 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188. Accordingly, the ALJ's explanation of the weight given to Dr. Haag's opinion was also legally inadequate.

## IV. Conclusion

For the reasons set forth above, the Court concludes that the ALJ failed to sufficiently articulate his analysis of the evidence to allow the reviewing court to trace his reasoning. See

9

*Scott*, 297 F.3d at 595. An award of benefits, however, is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. This is not such a case. Accordingly, the Court grants Plaintiff's motion [21] and remands this matter for further proceedings consistent with this opinion. The Commissioner's motion [35] is respectfully denied. The Court recommends that the case be transferred to a new ALJ to handle any additional proceedings. See *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

Dated: July 23, 2012             _____
                                                              Robert M. Dow, Jr.
                                                              United States District Judge